UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
                                                    :
DR. KIMBERLY ANN KOHLHAUSEN,                        :
                                                    :         CASE NO. 7:10-CV-3168
       Plaintiff,                                :
                                                    :
       v.                                        :         OPINION & ORDER
                                                    :         [Resolving Doc. No. 72]
SUNY ROCKLAND COMMUNITY                             :
COLLEGE, *et al.*,                                  :
                                                    :
       Defendants.                               :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this sex and marital status discrimination, harassment, and retaliation case, Defendants SUNY Rockland Community College Federation of Teachers, Local 1871 and Clifford L. Garner ("Union Defendants") move for summary judgment on Plaintiff Kimberly Kohlhausen's Fourteenth Amendment Equal Protection claim. [Doc. 72.] The Union Defendants say Kohlhausen fails to show they conspired with Kohlhausen's employer, SUNY Rockland Community College, or any of its agents to violate Kohlhausen's equal protection rights. Accordingly, the Union Defendants say, they cannot be held liable for acting "under color of law" as required for Kohlhausen to maintain an equal protection claim under 42 U.S.C. § 1983. Kohlhausen opposes the motion. She also moves for clarification of this Court's prior opinion and order granting the Union Defendants' motion to dismiss. [Doc. 77.]

The Court clarifies and amends its previous order and, for the following reasons, **GRANTS**

-1-

Case No. 7:10-CV-3168
Gwin, J.

the Union Defendant's present motion for summary judgment.

## I. Background

Kohlhausen brings this action against the Union Defendants, as well as her former employer, SUNY Rockland Community College ("SUNY Rockland"), the Board of Trustees of SUNY Rockland, the County of Rockland, SUNY Rockland President Clifford Wood, SUNY Rockland faculty member Ian Newhem,[1] and SUNY Rockland faculty member Martha Rottman (collectively the "Rockland Defendants"). [Doc. 51.] Kohlhausen generally alleges that she was harassed and discriminated against on the basis of her sex and marital status, that the Defendants' harassment created a sexually hostile work environment, and that the Defendants retaliated against her for protesting the harassment and for reporting the disruptive behavior of a SUNY Rockland student in her class. [Doc. 51.] Specific to the Union Defendants, Kohlhausen says the Union failed to represent her, file a grievance based on her harassment allegations, or take a position adverse to SUNY Rockland in connection with any of her complaints. Kohlhausen adds that the Union worked jointly with the school to deprive her of certain constitutional rights. [Doc. 77.]

Kohlhausen joined SUNY Rockland as a professor in 2003 and in 2008 was appointed to a tenure-track Instructor of Philosophy position. Kohlhausen joined the Federation of Teachers Union in 2007 who was the exclusive collective bargaining agent for Kohlhausen. Beginning sometime in 2007, Kohlhausen says, SUNY Rockland professor and Union grievance chairperson Ian Newhem began to verbally harass her. Newhem allegedly used profanity around and directed at Kohlhausen, called her inappropriate names, and physically threatened her. [Doc. 76-3 at 43.] At one point,

---

[1] There is some dispute between the parties as to whether Defendant Newhem's name is Ian Newman or Ian Newhem. For consistency, the Court refers to this Defendant as Ian Newhem.

Case No. 7:10-CV-3168
Gwin, J.

Kohlhausen says, Newhem revealed that he had a pornographic video of a SUNY Rockland student on his computer. [Doc. 76-3 at 36.]

Kohlhausen says she reported Newhem's behavior to Defendant Garner, a SUNY Rockland professor and coordinator of the school's "Sam Draper MTS" honors program. Garner was friends with Newhem. [Doc. 76-5 at 27, 30, 33, 64.] He had also witnessed Newhem use profane language around Kohlhausen. [Doc. 76-5 at 36.] Kohlhausen says Garner dissuaded her from formally filing a grievance through the Union in part because, according to Garner, any formal Union grievance would have to be processed by the entire Union executive committee, on which Newhem served as Grievance Chair. [Doc. 76-5 at 54.] However, Garner also offered to help Kohlhausen. [Doc. 76-5 at 47.] He brokered an agreement with Newhem that called for Newhem and Kohlhausen to stay away from each other and to attend meetings separately. [Doc. 76-3 at 56.] Kohlhausen says the agreement was not enforced.

As to Kohlhausen's sexual harassment allegations, Kohlhausen says Garner insisted that Newhem, as a gay male, could not be sexually harassing her. [Doc. 76-3 at 49.] Garner advised that Kohlhausen could at best assert a hostile work environment claim. [Doc. 76-4 at 20]

Privately, Garner allegedly teased Kohlhausen that she was being emotional and full of "gloom and doom." [Doc. 76-5 at 44.] Along with those comments, Kohlhausen says, Garner performed a melodramatic imitation of a slave character from the movie, *Gone With The Wind*, lifting his hands above his shoulders and waving them about while exclaiming "I'm so nervous." [Doc. 76-4 at 23.] Kohlhausen adds that SUNY Rockland President Clifford Wood later performed the same imitation while speaking with her, though Garner does not recall mentioning the imitation to Wood. [Doc. 76-4 at 24; Doc. 76-5 at 46.]

Case No. 7:10-CV-3168
Gwin, J.

In early 2009, after receiving several complaints from Kohlhausen about Newhem's behavior, SUNY Rockland began a formal investigation into Kohlhausen's harassment allegations.

In March 2009, Kohlhausen emailed Garner and two SUNY Rockland officials to report a series of disruptive incidents involving a student in her class. Garner then emailed other SUNY Rockland administrators, including SUNY Rockland President Wood, relaying Kohlhausen's complaint about the student and suggesting that Kohlhausen had little control over her classroom. [Doc. 76-31 at 5; Doc. 76-36 at 2.] President Wood replied to the emails stating, "We need to handle this very carefully." [Doc. 76-33.] Through a series of emails, Garner, Wood, and the other SUNY Rockland administrators planned a meeting "to discuss a plan of action." [Doc. 76-33.]

Neither the investigation into Kohlhausen's complaints of Newhem's harassment nor any investigation into her complaints of the student's disruptive behavior resulted in discipline for Newhem or the student. The Union never became formally involved with any of the incidents, and it did not file any grievance based on Kohlhausen's complaints. [Doc. 76-5 at 90; Doc. 84-1 at 58-59.]

In April 2009, based on its investigation into Kohlhausen's report of the student's disruptive behavior "and other recent incidents," SUNY Rockland suspended Kohlhausen, finding that she could not function or have constructive interactions with SUNY Rockland students, colleagues, and staff. [Doc. 76-28.] On May 13, 2009, the SUNY Rockland Board of Trustees rescinded Kohlhausen's recent reappointment for the upcoming school year.

Kohlhausen now brings claims under Title VII, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYHRL"), and Title IX, 20 U.S.C. § 1681, alleging that the SUNY Rockland Defendants and the Union Defendants harassed, discriminated and retaliated against her

Case No. 7:10-CV-3168
Gwin, J.

because of her sex and marital status. She also says that the Defendants ultimately revoked her reappointment as a SUNY Rockland faculty member because she reported her concerns about the student in her class. In addition, Kohlhausen alleges violations of her Fourteenth Amendment due process and equal protection rights and First Amendment rights, under 42 U.S.C. § 1983, and intentional infliction of emotional distress under New York state law.

The SUNY Rockland and Union Defendants, through two separate motions, moved to dismiss Kohlhausen's complaint. Relevant here, the Union Defendants moved to dismiss Kohlhausen's Title VII, NYHRL, Fourteenth Amendment procedural due process, First Amendment, and intentional infliction of emotional distress claims against them for failure to adequately allege a basis for union liability. [Doc. 27.] As to Kohlhausen's intentional infliction of emotional distress claim, the Union Defendants added that Garner's personal actions and comments to Kohlhausen were insufficient to support that claim. [Doc. 27 at 22.]

On February 9, 2011, the Court granted the Union Defendants' motion to dismiss. The Union Defendants now move for summary judgment on what they say is the only remaining claim against them: Kohlhausen's claim under § 1983 for alleged violations of her Fourteenth Amendment equal protection rights. [Doc. 72.]

## II. Clarification of the Court's February 9, 2011 Opinion and Order

As a preliminary matter, Kohlhausen says the Court did not dismiss any of her claims against Garner in his personal and official capacities under the NYHRL, under 42 U.S.C. § 1983, and for intentional infliction of emotional distress when it earlier ruled on the Union Defendants' motion to dismiss. [Doc. 77 at 5.] Construing Kohlhausen's arguments as a motion for clarification, the Court clarifies and amends its February 9, 2011 opinion and order on the Union Defendants' motion

Case No. 7:10-CV-3168
Gwin, J.

to dismiss.

The confusion over which claims have been dismissed arises from the parties' failure to distinguish between claims brought against Garner in his capacity as Union President and those brought against Garner in his capacity as a SUNY Rockland professor and coordinator of SUNY Rockland's honors program. In his motion to dismiss, filed jointly with the Union, Garner omitted any mention of Kohlhausen's claims against him as a SUNY Rockland faculty member and focused instead on his Union-related liability. [Doc. 27.] In opposing the motion to dismiss, Kohlhausen made no attempt to clarify her claims, distinguish between her Union-related and SUNY Rockland-related allegations, or highlight that her claims against Garner as a SUNY Rockland faculty member remained. [Doc. 32.] Thus, in its opinion resolving the Union and Garner's motion to dismiss, the Court focused on the Defendants' Union-related liability.

The Court first found that Kohlhausen had not stated a prima facie case of discrimination or retaliation under Title VII and the New York Human Rights Law ("NYHRL"), as she had not adequately pled (1) a breach of the collective bargaining agreement or (2) a causal connection between any protected activity and adverse action by the Union.[2] [Doc. 47 at 8-11.] Kohlhausen maintains, however, that her original complaint set forth a prima facie case against Garner under the NYHRL in his personal and "supervisory capacities." [Doc. 77 at 5.]

It is true that, unlike Title VII, the NYHRL permits individual liability where an individual defendant "actually participates in the conduct giving rise to a discrimination claim." *Lewis v.*

---

[2] Kohlhausen brought her Title VII claim against "all agents of the employer," SUNY Rockland. [Doc. 1 at 35, 37.] The SUNY Rockland Defendants moved to dismiss that claim, "to the extent [it was pleaded] against any of the individual defendants (Newhem, Wood, Rottman, Garner)." [Doc. 24 at 15.] The Court granted the motion to dismiss, finding that Title VII does not permit suits against individuals, "to the extent Kohlhausen seeks to hold individuals liable under Title VII." [Doc. 47 at 8.] Accordingly, Kohlhausen's Title VII claim against Garner in his personal capacity is dismissed.

Case No. 7:10-CV-3168
Gwin, J.

*Triborough Bridge and Tunnel Auth.*, 77 F. Supp. 2d 376, 380 (S.D.N.Y. 1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)). The Court, however, found in its earlier opinion that Kohlhausen had ultimately failed to state the underlying discrimination and retaliation claims because she had not adequately pled a prima facie case—a burden she must meet whether individual or official liability is permitted. *Cf. Mandell v. County of Suffolk*, 316 F.3d 368, 377-78 (2d Cir. 2003) (noting that individual liability may lie under the NYHRL but analyzing Title VII and NYHRL claims simultaneously and analogously under Title VII standards). The Court's conclusion thus applied equally to Kohlhausen's claim against Garner in his personal and official Union capacity. Kohlhausen's suggestion that a different standard should apply to her prima facie case against Garner as Union President, [Doc. 77 at 5], directly contradicts her own arguments addressing her claims under Title VII standards and upon the same facts as to both the Union and Garner. [Doc. 32 at 12; *Id.* at 13 ("Since the majority of the factual allegations imputed to the Union arose due to the actions and omissions of its President, Garner, the Plaintiff relies upon the same facts to support personal liability against Garner for discrimination and retaliation under [the NYHRL].").]

In addition, to the extent Kohlhausen brings her NYHRL claim against Garner in his official SUNY Rockland capacity, that claim is barred by sovereign immunity. Garner did not assert a sovereign immunity defense to Kohlhausen's NYHRL claim against him in his official SUNY Rockland capacity. Yet the Court, in its February 9, 2011 opinion, determined that state sovereign immunity precludes Kohlhausen's state-law claims against the SUNY Rockland officials in their official capacities. [Doc. 47 at 14.] Because a valid sovereign immunity defense precludes this Court's subject matter jurisdiction over Kohlhausen's NYHRL claim against Garner in his official SUNY Rockland capacity, the Court dismisses that claim. *See Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.3 (2d Cir. 2004) (dismissing for lack of jurisdiction where state sovereign immunity

-7-

Case No. 7:10-CV-3168
Gwin, J.

was not waived); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Second, the Court dismissed Kohlhausen's Fourteenth Amendment Due Process claim, brought under § 1983, finding that Kohlhausen had abandoned this claim. [Doc. 47 at 25.] Moreover, Kohlhausen's complaint did not adequately plead facts that, even if accepted as true, supported a reasonable inference of a conspiracy or concerted action between the Union and SUNY Rockland Defendants to deprive Kohlhausen of her procedural due process rights. The Union's alleged failure to intervene in any purported due process violation did not plausibly suggest a common plan or conspiracy between the Union and Rockland Defendants. And, removing the gloss of Kohlhausen's conclusory allegations, the other facts alleged in her complaint similarly failed to suggest an agreement or conspiracy to deprive Kohlhausen of due process. [Doc. 1 at 33, 44-45.] *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999). However, because the Union Defendants did not move to dismiss Kohlhausen's due process claim as against Garner for his actions as a SUNY Rockland official, that claim has not been abandoned or dismissed.

Third, the Court dismissed Kohlhausen's First Amendment claim under § 1983. Because Kohlhausen did not adequately plead that the Union owed her a duty of representation triggered by a relevant breach of the collective bargaining agreement, any failure to represent her in connection with the alleged First Amendment violation did not suggest a concerted action or conspiracy between the Union and SUNY Rockland Defendants. However, the Union and Garner's motion to dismiss focused exclusively on Garner's liability as a non-state actor. Thus, to the extent Kohlhausen levied her First Amendment claim against Garner as a SUNY Rockland official, that claim remains.

Finally, the Court dismissed Kohlhausen's intentional infliction of emotional distress claim

Case No. 7:10-CV-3168
Gwin, J.

as against the Union, Garner in his official Union capacity, and Garner in his personal capacity. [Doc. 47 at 28.] Garner did not assert a state sovereign immunity defense to Kohlhausen's claims against him in his official SUNY Rockland capacity. However, the Court again concludes that state sovereign immunity bars subject matter jurisdiction over Kohlhausen's state law claims against Garner in his official SUNY Rockland capacity. Kohlhausen's intentional infliction of emotional distress claim is therefore dismissed against Garner entirely.

Accordingly: Kohlhausen's Title VII, NYHRL, Fourteenth Amendment procedural due process, First Amendment, and intentional infliction of emotional distress claims against the Union are dismissed.

Kohlhausen's Title VII, NYHRL, Fourteenth Amendment procedural due process, First Amendment, and intentional infliction of emotional distress claims against Garner in his official capacity as Union President are dismissed.

Kohlhausen's NYHRL and intentional infliction of emotional distress claims against Garner in his official SUNY Rockland capacity are dismissed for lack of subject matter jurisdiction. However, because the Union Defendants did not move to dismiss Kohlhausen's Title VII, Fourteenth Amendment procedural due process, and First Amendment claims against Garner in his official SUNY Rockland capacity, those claims remain.

Kohlhausen's Title VII and intentional infliction of emotional distress claims against Garner in his personal capacity as coordinator of SUNY Rockland's honors program are dismissed. Because the Union Defendants did not move to dismiss Kohlhausen's NYHRL, Fourteenth Amendment procedural due process, or First Amendment claims against Garner in his personal capacity as coordinator of SUNY Rockland's honors program, those claims remain.

Finally, Kohlhausen's Title VII, NYHRL, Fourteenth Amendment procedural due process,

-9-

Case No. 7:10-CV-3168
Gwin, J.

First Amendment, and intentional infliction of emotional distress claims against Garner in his personal capacity as Union President are dismissed.

### III. Equal Protection Claim

The Union and Garner now move for summary judgment on Kohlhausen's Fourteenth Amendment Equal Protection claim, brought under 42 U.S.C. § 1983. [Doc. 72.] In their motion, the Union Defendants focus exclusively on the Union and Garner's liability under § 1983 as non-state actors.[3/]  They do not move for summary judgment on Kohlhausen's claims against Garner as a SUNY Rockland official.  Therefore, the Court addresses only Kohlhausen's claims against the Union and against Garner as Union President.

Summary judgment is appropriate where the evidence submitted shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party.  *McPherson v. Coombe*, 174 F.3d 276, 279-80 (2d Cir. 1999)

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the nonmoving party rely upon the mere

---

[3/]Labor unions and their agents are generally not state actors. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).  Kohlhausen does not dispute that the Union or Garner (as Union President) are non-state actors.

Case No. 7:10-CV-3168
Gwin, J.

allegations or denials of its pleadings. Fed. R. Civ. P. 56(e).

### *A. Action Fairly Attributable to the State*

To make out a § 1983 claim, a plaintiff must show that she was injured by either a state actor or a private party acting under color of state law. *See Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). To satisfy the state action requirement where, as here, a "defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Tancredi v. Met. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). Conduct of a private entity is attributable to the state when at least one of three tests is met: "(1) the entity acts pursuant to the 'coercive power' of the state (the 'compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in the joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate' ('public function test')." *Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (modification in original)).

Kohlhausen suggests that the Union and Garner were themselves essentially "state actors" for the purposes of § 1983 liability because they were willful participants in joint action with the State or its agents. [Doc. 77 at 24 (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).] "Thus," Kohlhausen explains, "if the Union and/or Garner are found to have conspired with [the SUNY Rockland] administration . . . they may be held liable under § 1983 . . . ." [Doc. 77 at 24.] The Court therefore analyzes Kohlhausen's claim under the "joint action" or "close nexus" test.

Under this test, there must be "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood*, 531 U.S. at 295 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351

-11-

Case No. 7:10-CV-3168
Gwin, J.

(1974)). This test "specifically examines the state's link to the challenged action." *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1082 (2d Cir. 1990). Joint action may be shown through a "plan, prearrangement, conspiracy, custom, or policy" such that the state or its agents do not exercise judgment independent of the non-state actor. *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999). In turn, "[t]o state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear*, 954 F.2d at 68). The question central to this analysis remains whether the actions of the private entity and the state are so entwined that the alleged infringement of federal rights is "fairly attributable to the state." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982); *Hadges*, 918 F.2d at 1081; *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

Because Kohlhausen has not presented sufficient evidence to support an inference that the Union or its agents conspired, prearranged, or otherwise acted in concert with SUNY Rockland or its agents such that the Union's actions may be fairly attributable to the State, her equal protection claim against the Union Defendants fails.

Kohlhausen primarily argues that the emails between Garner and various SUNY Rockland administrators planning a meeting in response to Kohlhausen's complaint about the student "raise[s] questions of fact that a 'plan of action' concerning Dr. Kohlhausen was discussed." [Doc. 77 at 25.] According to Kohlhausen, this "plan of action" dealt with using Kohlhausen's report of her student's disruptive behavior "as a pretext for her termination." [Doc. 77 at 26.]

-12-

Case No. 7:10-CV-3168
Gwin, J.

But even assuming that the planned meeting actually occurred, and that Garner acted in his capacity as Union President in planning and attending the meeting, the emails and meeting do not lead to a reasonable inference that the Union, through its President, entered into an agreement with SUNY Rockland to violate Kohlhausen's equal protection rights. Read in context of the entire email chain, the emails between Garner and SUNY Rockland administrators simply reflect that a meeting was set up to discuss a "plan of action" to address Kohlhausen's complaint about a student in her class. Far from being suspicious, these emails suggest only that Garner and SUNY Rockland discussed or investigated Kohlhausen's complaint. They do not indicate a common plan or concerted effort to violate Kohlhausen's equal protection rights. The mere opportunity to conspire at this meeting does not create a material issue of fact as to whether a conspiracy or plan to discriminate was actually formed. *See Scotto v. Almenas*, 143 F.3d 105, 114-15 (2d Cir. 1999) (several telephone calls and other communications was not enough to create a material issue of fact as to whether a conspiracy existed); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 256 (2d Cir. 1984) (holding that evidence that alleged conspirators "met and communicated" on a number of occasions was not enough to create a material issue of fact as to whether a conspiracy existed where there is "nothing suspicious or improper" about the communication).

Second, Kohlhausen suggests that joint action should be inferred from the fact that SUNY Rockland President Wood performed the same "doom and gloom" impression that Garner had privately performed in front of Kohlhausen. Kohlhausen says that Wood's subsequent performance of the impression "suggests that the two Presidents had joined forces in mocking [her], condoning the harassment and/or planning how to respond to the complaints." [Doc. 77 at 25.] Kohlhausen's argument calls for several assumptions: first, that Garner had earlier performed the impression and had done so to mock Kohlhausen; second, that Wood had learned of the impression from Garner;

-13-

Case No. 7:10-CV-3168
Gwin, J.

third, that Wood also performed the impression; and fourth, that Wood did so to mock Kohlhausen. Even taking these inferences, however, there is still no reasonable indication that Garner and Wood had "joined forces" to condone Newhem's harassment or were jointly planning a discriminatory or otherwise adverse response to Kohlhausen's complaints.

Finally, Kohlhausen says that a joint action or conspiracy can be surmised from various of her allegations, particularly from "the very fact that [she] has alleged that she was constructively expelled from the Union and that . . . at no point was the Union's position adversarial" to SUNY Rockland. [Doc. 77 at 27.] Not only, however, are a plaintiff's bare allegations insufficient to show an issue of material fact, but even evidence that the Union failed to become formally involved in Kohlhausen's complaints, [Doc. 76-5 at 90], is not enough to show that this lack of action resulted from a specific understanding with SUNY Rockland or its agents to deprive Kohlhausen of her equal protection rights.  Nor does the mere fact of Garner's friendship with Newhem or influence with various SUNY Rockland administrators reasonably suggest a conspiracy, concerted action, or plan to violate Kohlhausen's rights, such that the Union or Garner's actions could be fairly attributable to the state.

Because Kohlhausen has not presented sufficient evidence to substantiate her own speculation and support a reasonable inference that the Union Defendants specifically conspired or acted so closely together with SUNY Rockland or its agents such that the Union or Garner's actions are fairly attributable to the State, Kohlhausen cannot make out a § 1983 claim against the Union Defendants under the "joint action" or "close nexus" test.

*B. § 1983 Conspiracy*

Even if the alleged conduct by a private entity is not fairly attributable to the state under the "joint action" or "close nexus" test, a non-state actor may be subject to § 1983 liability if the non-

-14-

Case No. 7:10-CV-3168
Gwin, J.

state actor conspired with a state actor in the deprivation a plaintiff's constitutional rights. *Ciambriello*, 292 F.3d at 324. To show a § 1983 conspiracy between a private entity and a state actor, a plaintiff must establish (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Id.* at 324-25. Although courts have recognized that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)), "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct," *Ciambriello*, 292 F.3d at 325.

Here, just as Kohlhausen has not presented sufficient evidence to support her "joint action" theory of § 1983 liability, Kohlhausen's § 1983 conspiracy claim also fails. Even drawing all reasonable inferences in Kohlhausen's favor, the evidence does not support that the Union Defendants reached a specific agreement, either explicit or implicit, with SUNY Rockland or its agents to violate Kohlhausen's equal protection rights. Accordingly, because Kohlhausen does not raise an issue of material fact as to whether there was a meeting of the minds, as is required to show a conspiracy, she cannot make out a § 1983 conspiracy claim.

The Court thus **GRANTS** the Union Defendants' motion for summary judgment on Kohlhausen's Fourteenth Amendment Equal Protection claim, as to the Union and Garner as Union President.

IT IS SO ORDERED.

Dated: July 12, 2011                                         _____
                                                              JAMES S. GWIN
                                                              UNITED STATES DISTRICT JUDGE